IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

TERESA GOOD,

    Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.

CIVIL ACTION NO.: CV508-032

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff contests the decision of Administrative Law Judge Morton J. Gold, Jr., ("the ALJ" or "ALJ Gold") denying her claim for a Period of Disability, Disability Insurance Benefits, and Supplemental Security Income. Plaintiff urges the Court to reverse the ALJ's decision and enter an award finding Plaintiff disabled, or, in the alternative, to remand this case for a proper determination of the evidence. Defendant asserts the Commissioner's decision is supported by substantial evidence and should be affirmed.

Plaintiff protectively filed an application for a Period of Disability, Disability Insurance Benefits, and Supplemental Security Income on June 23, 2005, alleging that she became disabled on June 15, 2003[1], due to fibromyalgia, asthma, high blood

---

[1] ALJ Gold noted that Plaintiff had previously filed an application for benefits on September 23, 2003, alleging that she became disabled on June 15, 2003. ALJ Gold also noted that Plaintiff's first application was denied on all administrative levels and that her new application did not present new and material evidence or otherwise establish good cause to reopen Plaintiff's first application. ALJ Gold further noted

pressure, pre-menstrual syndrome, temporomandibular joint dysfunction ("TMJ"), restless leg syndrome, and depression. (Tr. at 14; Pl.'s Br., p. 2). After her claim was denied initially and upon reconsideration, Plaintiff filed a timely request for a hearing. On July 31, 2007, ALJ Gold held a hearing at which Plaintiff, represented by counsel, appeared and testified. Ronald J. Spitznagel, a vocational expert, also testified at this hearing. ALJ Gold found that Plaintiff was not disabled within the meaning of the Act. (Tr. at 13). The Appeals Council denied Plaintiff's request for review of the ALJ's decision, and the decision of the ALJ became the final decision of the Commissioner for judicial review. (Tr. at 4).

Plaintiff, born on March 5, 1962, was forty-five (45) years old when ALJ Gold issued his decision. She has a high school education. (Tr. at 19). Her past relevant work experience includes employment as a construction worker, building cleaner, assistant shift manager/manager food services, cashier, hostess, waitress, and bartender. (Id.).

## ALJ'S FINDINGS

Pursuant to the Act, the Commissioner has established a five-step process to determine whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920; Bowen v. Yuckert, 482 U.S. 137, 140 (1987). The first step determines if the claimant is engaged in "substantial gainful activity." Yuckert, 482 U.S. at 140. If the claimant is engaged in substantial gainful activity, then benefits are immediately denied. Id. If the claimant is not engaged in such activity, then the second inquiry is whether the claimant has a medically severe impairment or combination of impairments. Yuckert, 482 U.S. at 140-

---

that any discussion of evidence dated before June 2005 in his decision on Plaintiff's second application was for the sake of clarification regarding Plaintiff's impairments. (Tr. at 12).

41. If the claimant's impairment or combination of impairments is severe, then the evaluation proceeds to step three. The third step requires a determination of whether the claimant's impairment meets or equals one of the impairments listed in the Code of Federal Regulations and acknowledged by the Commissioner as sufficiently severe to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d) and 416.920(d); 20 C.F.R. Pt. 404, Subpt. P. App. 1; Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004). If the impairment meets or equals one of the listed impairments, the plaintiff is presumed disabled. Yuckert, 482 U.S. at 141. If the impairment does not meet or equal one of the listed impairments, the sequential evaluation proceeds to the fourth step to determine if the impairment precludes the claimant from performing past relevant work. Id. If the claimant is unable to perform her past relevant work, the final step of the evaluation process determines whether she is able to adjust to other work in the national economy, considering her age, education, and work experience. Phillips, 357 F.3d at 1239. Disability benefits will be awarded only if the claimant is unable to perform other work. Yuckert, 482 U.S. at 142.

In the instant case, the ALJ followed this sequential process to determine that, after the alleged onset date of June 10, 2005, there was no evidence that Plaintiff engaged in substantial gainful activity. (Tr. at 19). At Step Two, the ALJ determined that Plaintiff had fibromyalgia, asthma, obesity, and depression, which are severe impairments. Also at Step Two, the ALJ determined that Plaintiff's anxiety was non-severe; her leg edema was non-severe, as it did not persist for at least 12 consecutive months during the relevant period; and her headaches, gastroesophageal reflux disease ("GERD"), PMS, allergies, hypertension, mitral valve prolapse, restless leg syndrome,

and TMJ dysfunction were non-severe conditions, as defined by the Act. ALJ Gold determined that Plaintiff's impairments did not meet or medically equal a listed impairment. ALJ Gold found Plaintiff had the residual functional capacity to perform work at the light exertional level with the ability to: not climb ladders, ropes, or scaffolding; sit, stand, walk, push and/or pull for at least six hours in an eight hour workday; lift/carry 20 pounds occasionally and 10 pounds frequently; climb ramps/stairs, balance, stoop, kneel, crouch, and crawl for no more than 2 ½ hours in an eight-hour workday; avoid concentrated exposure to environmental pollutants and irritants because of her asthma; and avoid hazardous work environments because her obesity might place her in harm's way. (Tr. at 16). At the next step, ALJ Gold concluded that Plaintiff could not perform her past relevant work. ALJ Gold considered Plaintiff's age, education, work experience, and residual functional capacity and determined Plaintiff could adjust to other jobs which exist in significant numbers in the national economy and which Plaintiff could perform; these jobs were: a hospital plastic parts assembler, a small parts assembler, and a silverware wrapper. (Tr. at 20.).

## ISSUES PRESENTED

Plaintiff asserts ALJ Gold improperly failed to identify medical evidence to support his finding that Plaintiff was able to perform light work on a regular and sustained basis. Plaintiff also asserts the ALJ improperly discredited the subjective testimony offered by Plaintiff.

## STANDARD OF REVIEW

It is well-established that judicial review of social security cases is limited to questions of whether the Commissioner's factual findings are supported by "substantial

AO 72A
(Rev. 8/82)

4

evidence," and whether the Commissioner has applied appropriate legal standards. Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). A reviewing court does not "decide facts anew, reweigh the evidence or substitute" its judgment for that of the Commissioner. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). Even if the evidence preponderates against the Commissioner's factual findings, the court must affirm a decision supported by substantial evidence. Id.

However, substantial evidence must do more than create a suspicion of the existence of the fact to be proved. The evidence relied upon must be relevant evidence which a reasonable mind would find adequate to support a conclusion. Walden v. Schweiker, 672 F.2d 835, 838-39 (11th Cir. 1982). The substantial evidence standard requires more than a scintilla but less than a preponderance of evidence. Dyer, 395 F.3d at 1210. In its review, the court must also determine whether the ALJ or Commissioner applied appropriate legal standards. Failure to delineate and apply the appropriate standards mandates that the findings be vacated and remanded for clarification. Cornelius, 936 F.2d at 1146.

## DISCUSSION AND CITATION TO AUTHORITY

I.  **ALJ's Finding for Plaintiff's Residual Functional Capacity**

Plaintiff contends ALJ Gold did not cite any evidence which supports his finding that she retained the ability to perform work at the light exertional level which required the frequent use of her hands. Plaintiff also contends that the ALJ did not address her treating physician's statement that Plaintiff was not capable of employment, nor could she participate in volunteer activities, training, or schooling due to fibromyalgia, migraine

AO 72A
(Rev. 8/82)

5

headaches, a mood disorder, and other limitations. Plaintiff asserts that the ALJ did not consider the records of Dr. Eugene Engen, who conducted a consultative mental evaluation of Plaintiff in September 2005. Plaintiff alleges that ALJ Gold erred in discounting the limitations and effects of the numerous medications she takes. Plaintiff contends that the ALJ failed to discuss her medical records from the doctors at McKinney Community Health Center, who have treated Plaintiff for many years. Plaintiff further contends that ALJ Gold did not address the records of her treating psychiatrist or the counselors at Satilla Community Mental Health.

Defendant avers that substantial evidence supports the ALJ's decision to not include any limitations on handling or fingering in Plaintiff's residual functional capacity, as the unrebutted medical evidence demonstrated that Plaintiff retained the ability to handle and finger objects without limitation. Defendant asserts that ALJ Gold explained that he did not accept Dr. Garcia's May 2007 medical source statement because it provided no basis on how Plaintiff's health problems functionally impacted her ability to work. Defendant also asserts the ALJ rejected Dr. Garcia's opinions because they were conclusory and contradicted his prior statements and other evidence suggested Plaintiff suffered fewer limitations than Dr. Garcia found. Defendant alleges that ALJ Gold found Plaintiff had several functional limitations resulting from her mental impairments. Defendant contends that substantial evidence supports ALJ Gold's findings as to Plaintiff's mental residual functional capacity, including the opinions of the State agency psychologists, Drs. Linda O'Neill, Robert Koontz, and David Acker. Defendant asserts that Plaintiff's treating physicians' notes support the ALJ's findings on the residual functional capacity. Defendant also asserts that the ALJ recognized that he had to

consider the side effects of Plaintiff's medication, and his silence on the matter does not warrant a remand. Defendant also asserts that Plaintiff did not complain about any of the side effects of her medications to her physicians, and the consultative examinations demonstrate that any side effects were minimal. Defendant further asserts that the ALJ detailed Plaintiff's medical records from Dr. Roberto Garcia, her primary care provider at McKinney, but he did not discuss Plaintiff's visits with Dr. Earl Martin, as those visits occurred prior to June 10, 2005. Finally, Defendant alleges that the ALJ repeatedly cited to Plaintiff's records from Satilla.

In determining Plaintiff's residual functional capacity, ALJ Gold reviewed Plaintiff's medical records, including those from her treating physician, Dr. Garcia. ALJ Gold noted that Dr. Garcia found Plaintiff's asthma and hypertension were well-controlled on medication and that her pain due to fibromyalgia responded to Elavil and had improved. (Tr. at 14). The ALJ also noted that there was no indication from Plaintiff's medical records that her PMS, TMJ, or restless leg syndrome were ongoing conditions or that they resulted in more than mild, if any, functional limitations for a 12 month period. The ALJ also noted that, in February 2007, Plaintiff's medical records indicated that Plaintiff's pain was partially controlled with her medications. ALJ Gold stated that Plaintiff reported in June 2006 that her asthma "was acting up lately[ ]", and she had a one-time complaint of "almost" blacking out 3 times in the prior week and of feeling weak. (Tr. at 15) (quoting Tr. at 243). Plaintiff was given Antivert for 2 or 3 days only for vertigo/benign positional vertigo; no other complaints were of record. The ALJ observed that Plaintiff was given several medications for her asthma, and she was still recovering from a respiratory tract infection and bronchitis. ALJ Gold stated that Plaintiff

reported in August 2006 that her asthma was doing well. In examinations in May through July 2007, Plaintiff did not report having any problems with her asthma, and her medical records revealed that her asthma was well-controlled. ALJ Gold noted that Plaintiff reported sleeping well on medication, despite complaining of nocturnal restless leg syndrome. The ALJ specifically discounted Dr. Garcia's May 2007 medical source statement because it provided "no reasons on how health problems functionally impact[ed Plaintiff's] ability to work[ ]" and was inconsistent with Dr. Garcia's prior recommendation. (Tr. at 18, 199-200).

As for Plaintiff's alleged psychological limitations, ALJ Gold noted that Plaintiff alleged she suffered from chronic depression since the mid-1980s, yet there was no evidence that Plaintiff ever had formal psychological treatment or was admitted to a psychiatric facility prior to September 6, 2006, when she initiated counseling. ALJ Gold observed that Plaintiff described her activities of daily living as decreased primarily due to physical conditions and pain, except during a psychological consultative evaluation interview. ALJ Gold remarked that Plaintiff had an average IQ score, slightly decreased intermediate memory, and some mild decrease in concentration, persistence, and pace. ALJ Gold also remarked that Plaintiff's IQ scores from 2004 were not consistent with someone suffering from severe depression. The ALJ noted that mental status examinations by Plaintiff's treating psychiatrists for a six (6) month period (October 2006 to April 2007) "were totally unremarkable except for a solemn demeanor during the initial exam." (Tr. at 15). The ALJ observed that Plaintiff's Global Assessment of Functioning score was consistently 78, and Dr. Garcia opined that Plaintiff's depression

was "moderate". (Id.) ALJ Gold noted that the treating psychiatrists never diagnosed Plaintiff with an anxiety disorder.

The ALJ adopted the opinions of the State agency medical and psychological consultants, (Tr. at 272-78, 252-64), as he found these opinions to be well-supported and consistent with the evidence of record. In so doing, the ALJ stated that he gave due consideration to Plaintiff's subjective complaints to the extent they were credible, reasonable, and supported by objective medical findings. (Tr. at 19).

It is clear that ALJ Gold relied on the record as a whole in determining that Plaintiff had the residual functional capacity to perform work at the light exertional level. ALJ Gold relied on the medical records from Plaintiff's treating physicians and psychologists, except for one of Dr. Garcia's medical source statements. The opinions from treating sources "must be given substantial or considerable weight unless good cause is shown to the contrary." Phillips v. Barnhart, 357 F.3d 1232, 1240-41 (11th Cir. 2004). An ALJ is permitted to disregard a treating physician's opinion if it is conclusory or contradicted by other evidence.[2] ALJ Gold's determination of Plaintiff's residual functional capacity is supported by substantial evidence, and Plaintiff's contention to the contrary is without merit.

II. **Credibility Determinations**

Plaintiff asserts that there is no evidence to support ALJ Gold's finding that she was not credible in her complaints of the severity and nature of her pain caused by fibromyalgia. Plaintiff alleges that the ALJ did not consider that her "persistent efforts"

---

[2] The opinions from treating sources "must be given substantial or considerable weight unless good cause is shown to the contrary. 'Good cause'" exists when: (1) the treating physician's opinion is not supported by the record; (2) the record supports a finding inconsistent with the treating physician's opinion; or (3) the treating physician's opinion is conclusory or inconsistent with his own medical records.

to obtain pain relief enhanced her credibility. (Doc. No. 23, p. 18). Plaintiff also alleges the ALJ's agreement with her family that she was not as disabled as she claimed does not support the ALJ's finding that Plaintiff was not fully credible. Plaintiff contends that ALJ Gold improperly reviewed evidence of Plaintiff being sexually active as a reason to question her credibility. Plaintiff also contends that the ALJ failed to consider the statements of two (2) lay witnesses.

Defendant asserts that the ALJ did mistakenly regard Plaintiff's sexual activities and reasons for using birth control; however, Defendant asserts, ALJ Gold cited ample and valid reasons to doubt Plaintiff's credibility. Defendant contends that ALJ Gold noted that there were inconsistencies between Plaintiff's reported symptoms and her treatment and evaluations. Defendant also contends that no treating physician, psychiatrist, or counselor ever noted that Plaintiff had any meaningful cognitive deficits or speech problems. Defendant also contends that ALJ Gold reasonably found that Plaintiff attempted to "game the system in her second consultative evaluation, further undermining her credibility." (Doc. No. 24, p. 22). Defendant further contends that the ALJ was entitled to rely on the credible evidence of record rather than the declarations of Plaintiff's mother and son.

If a plaintiff "testifies as to [her] subjective complaints of disabling pain and other symptoms, . . . the ALJ must clearly 'articulate explicit and adequate reasons' for discrediting the claimant's allegations of completely disabling symptoms." Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Foote v. Chater, 67 F.3d 1553, 1561-62 (11th Cir.1995)). "Although this circuit does not require an explicit finding as to credibility, the implication must be obvious to the reviewing court." Id. (internal citation

omitted). An ALJ's credibility determination need not "cite 'particular phrases or formulations'[,] but it cannot merely be a broad rejection which is 'not enough to enable [a reviewing court] to conclude that [the ALJ] considered [a plaintiff's] medical condition as a whole.'" Id. at 1210-11 (quoting Foote, 67 F.3d at 1561).

ALJ Gold noted that he found Plaintiff's allegations of some degree of depression secondary to pain and a general medical condition were credible, and observations made during physical examination confirmed some depression. However, ALJ Gold also noted that Plaintiff "learned through her applications [for Social Security benefits] and her natural intelligence to emphasize her mental health problems to the psychologist on her second application." (Tr. at 18). The ALJ stated that Dr. Acker, who evaluated Plaintiff in October 2004, found Plaintiff's main problem to be asthma, whereas Dr. Engen, who evaluated Plaintiff in September 2005, found Plaintiff's main problems to be depression and anxiety. ALJ Gold noted that Plaintiff appeared to learn how to "respond better" to the consultative examinations from October 2004 until September 2005, as Plaintiff no longer had any physical activities of daily living, her depression and anxiety dated back to 1985, and she did virtually nothing as a result of her mental problems. (Id.) The ALJ observed that Plaintiff had never been sent to a mental health facility by any doctor, including her treating physician, Dr. Garcia, for depression or anxiety, because these conditions were adequately treated by the medications Dr. Garcia prescribed. ALJ Gold noted that Plaintiff was going to a mental health center, where "they repeatedly note[d] two things: (1) [Plaintiff was] vigorously pursuing disability benefits; and (2) her family does not think she [was] very bad off—an opinion with which the undersigned concurs." (Id.) ALJ Gold agreed that Plaintiff's

ability to concentrate was diminished and moderately limited due to her depression and her chronic pain. Nevertheless, the ALJ observed that Plaintiff functioned intellectually within normal limits, demonstrated relatively good judgment despite findings of a major depressive order exacerbated by chronic medical problems, respect for reality, comprehension of social norms, and impulse control. ALJ Gold also observed that Plaintiff graduated from high school with satisfactory performance and without repeating any grade. ALJ Gold noted that Plaintiff's activities of daily living included cooking once or twice a week, a little sweeping or vacuuming, washing clothes, shopping, and sitting in a lounge chair. ALJ Gold concluded by stating he adopted the opinions of the State agency medical and psychological consultants, as he found them to be supported by and consistent with the evidence of record, and that he considered Plaintiff's subjective complaints to the extent they were supported by objective medical findings. (Tr. at 19).

ALJ Gold did not find Plaintiff fully credible because he found Plaintiff's subjective allegations of physical and mental limitations were not supported by the objective evidence of record. ALJ Gold implicitly found that he thought Plaintiff learned to "play the system" after her fist application for benefits was denied and that is why she seemed to be worse off in September 2005. In addition, ALJ Gold was not required to look to the testimony of Plaintiff's lay witnesses because his decision is supported by substantial evidence. See McCloud v. Barnhart, 166 F. App'x 410, 417 (11th Cir. 2006) (noting that an ALJ does not err by not allowing lay witness testimony when the medical evidence supports the ALJ's determination). It is evident that ALJ Gold considered the

evidence of record before weighing Plaintiff's credibility. This enumeration of error is without merit.[3]

## CONCLUSION

Based on the foregoing, it is my **RECOMMENDATION** that the decision of the Commissioner be **AFFIRMED**.

**SO REPORTED** and **RECOMMENDED**, this 14th day of August, 2009.

JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE

---

[3] Also without merit is Plaintiff's seeming assertion that, because ALJ Gold cited to Plaintiff's alleged sexual activity in error, his finding on Plaintiff's credibility is incorrect. ALJ Gold cited other evidence in support of his finding as to Plaintiff's credibility.